IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-00646-MOC-WCM

| | |
|---|---|
| KRISTA MAGDALENE AIDALA, | ) |
| Plaintiff, | ) |
| v. | ) MEMORANDUM AND |
| | ) RECOMMENDATION |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

This matter is before the Court on the parties' cross motions for summary judgment (Docs. 8, 10), which have been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.[1]

## I. Procedural Background

In April of 2018, Plaintiff Krista Magdalene Aidala ("Plaintiff") filed an application for disability insurance benefits, alleging disability beginning January 2, 2018. Transcript of the Administrative Record ("AR") 242-243.

On May 1, 2020, following an administrative hearing at which Plaintiff appeared and testified, an Administrative Law Judge ("ALJ") issued an

---

[1] Although Plaintiff cites Rule 12(c) of the Federal Rules of Civil Procedure in the body of her Motion, the title of that Motion is "Plaintiff's Motion for Summary Judgment." Doc. 8.

1

unfavorable decision. AR 16-38. That decision is the Commissioner's final decision for purposes of this action.

## II. The ALJ's Decision

The ALJ found that Plaintiff had the severe impairments of "fibromyalgia; psoriatic arthritis; mild bilateral facet arthropathy at L4-L5 and L5-S1; hyperlipidemia; hypothyroidism; obesity; depression; and anxiety." AR 21. After determining that Plaintiff's impairments did not meet or medically equal one of the listed impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC"):

> to perform medium work…except she is limited to frequent, but not continuous climbing of ladders, ropes, or scaffolds; she is limited to frequent, but not continuous use of her bilateral upper extremities for fingering and grasping activities; she must avoid concentrated exposure to workplace hazards; and she is further limited to jobs performing unskilled tasks of a routine and repetitive nature.

AR 26.

Applying this RFC, the ALJ found that Plaintiff had the ability to perform certain jobs that exist in significant numbers in the national economy such that Plaintiff was not disabled during the relevant period. AR 32-33.

## III. Plaintiff's Allegations of Error

Plaintiff contends that, when developing her RFC, the ALJ failed to use the proper regulatory framework, improperly discounted her subjective

2

symptoms, and otherwise developed an RFC that was not supported by substantial evidence. Additionally, Plaintiff contends that the ALJ failed to establish, through examination of the vocational expert ("VE"), that Plaintiff had the ability to perform other jobs.

## IV. Standard of Review

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. The burden rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). When a

3

federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that she is not disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

V. Discussion

A. RFC

1. Proper Regulatory Framework

"A social security claimant's RFC represents 'the most [she] can still do despite [her] limitations.'" Dowling v. Commissioner of Social Security Administration, 986 F.3d 377, 387 (4th Cir. 2021) (quoting 20 C.F.R. § 416.945(a)(1)). "Evaluating an RFC requires an ALJ to consider all of the claimant's physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [her] ability to work." Id. (quoting Thomas v. Berryhill, 916 F.3d 307, 311 (4th Cir. 2019) (quoting Monroe v. Colvin, 826 F.3d 176, 188 (4th Cir. 2016)).

In Dowling, the Fourth Circuit emphasized that this function-by-function assessment of a claimant's abilities must be based on the correct

4

regulatory framework, i.e., that set forth in 20 C.F.R. §§ 404.1545 and/or 416.945 and SSR 96-8p, 1996 WL 374184 (July 2, 1996).[2]

Pursuant to SSR 96-8p, an ALJ's RFC assessment must include an evaluation of the claimant's ability to perform certain physical functions. "These functions are: 'sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions [that] may reduce [a claimant's] ability to do past work and other work.'" 986 F.3d at 387 (quoting 20 C.F.R. § 416.945(b)). Because the ALJ in Dowling failed to cite 20 C.F.R. § 416.945 and SSR 96-8p, "did not indicate that his RFC assessment was rooted in a function-by-function analysis," and instead only conducted an evaluation of the claimant's symptoms (a related, but "separate and distinct inquiry"), remand was appropriate. Id. at 387.

Here, the ALJ only referenced SSR 96-8p and 20 C.F.R. §404.1545 in the "applicable law" section of his opinion. AR 21. Further, when developing Plaintiff's RFC, the ALJ appears to have focused on Plaintiff's symptoms. See AR at 26-31. See also Daniels v. Saul, No. 4:19-CV-175-FL, 2021 WL 826775 (E.D.N.C. Feb. 11, 2021) (recommending remand where the ALJ only referenced SSR 96-8p in the "applicable law" section, stated that the RFC was

---

[2] 20 C.F.R. § 404.1545 sets out the evaluation process of a claimant's physical abilities relative to claims for disability insurance benefits, while 20 C.F.R. § 416.945 sets out an identical process relative to claims for supplemental security income.

5

Case 3:20-cv-00646-MOC-WCM   Document 12   Filed 11/01/21   Page 5 of 16

based on the requirements regarding evaluation of a claimant's symptoms, and did not explain how the specific functional limitations included in the RFC were based on the listed evidence), report and recommendation adopted, 2021 WL 825835 (E.D.N.C. March 3, 2021); Patterson v. Commissioner of Social Security Administration, No. 9:19-cv-03378-BHH-MHC, 2021 WL 1431376, at *7 (D.S.C. Jan. 27, 2021) ("it appears that the ALJ conflated the RFC assessment with that of the symptom evaluation under SSR 16-3p, which was error") (internal citation omitted), report and recommendation adopted, 2021 WL 912419 (D.S.C. March 10, 2021).

The undersigned acknowledges that following a discussion of various medical records and the opinion evidence, the ALJ stated that in making his "function-by-function assessment," he "generally agree[d] with the functional limitations imposed by the State agency medical consultants." AR 31. The state agency consultants, though, did not agree on what Plaintiff's functional limitations were. Significantly, Dr. M. Fountain concluded, on initial review, that Plaintiff could "occasionally" lift and/or carry 20 pounds and "frequently" lift and/or carry 10 pounds. AR 151. In contrast, Dr. Evelyn Jimenez-Medina, on reconsideration, concluded that Plaintiff could "occasionally" lift and/or carry 50 pounds, and "frequently" lift and/or carry 25 pounds. AR 167.

As set out in Plaintiff's RFC, the ALJ determined that Plaintiff could perform "medium" work, which "involves lifting no more than 50 pounds at a

time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c); 416.967(c).

Accordingly, while it appears that Dr. Jimenez-Medina's opinion regarding Plaintiff's ability to lift and/or carry is consistent with an ability to perform "medium" work, Dr. Fountain's is not. However, the ALJ did not discuss this discrepancy.[3] Cf. Key v. Kijakazi, No. 1:20CV552, 2021 WL 3887616, at *4 (M.D.N.C. Aug. 31, 2021) (finding ALJ conducted an appropriate function-by-function analysis where ALJ discussed the functional limitations set out by the state agency consultants and adopted one of those consultant's limitations in their entirety such that it was "amply apparent how the ALJ determined Plaintiff's capacity to perform all of the functions included in her RFC assessment"), recommendation adopted, Doc. 18 (M.D.N.C. Sept. 24, 2021).

## 2. Plaintiff's Subjective Symptoms

When evaluating a claimant's symptoms, an ALJ must use the two-step framework set forth in 20 C.F.R. §§ 404.1529 and/or 416.929 and SSR 16-3p, 2016 WL 1119029 (March 16, 2016).

---

[3] Additionally, although the ALJ noted earlier in his opinion that Plaintiff had been diagnosed as obese, and that "[t]he evidence shows that the claimant's excess weight aggravates her back and joint pain and limited her ability to perform strenuous activities such as heavy lifting," AR 22, the ALJ did not provide further discussion regarding what those limitations were. This omission is noteworthy considering his conclusion that Plaintiff could lift and/or carry up to fifty pounds.

7

First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. See 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3.

Second, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. See 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4. The Fourth Circuit has consistently recognized that "[a]t this step, objective evidence is not required to find the claimant disabled." Arakas v. Commissioner, Social Security Administration, 983 F.3d 83, 95 (4th Cir. 2020).

Significantly, in cases involving fibromyalgia, the Fourth Circuit has recognized that "'symptoms are entirely subjective,' with the exception of trigger-point evidence" and that physical examinations of patients with fibromyalgia will usually yield normal results (i.e., full range of motion, no joint swelling, normal muscle strength, and normal neurological reactions). Id. (citing Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996); Green-Younger v. Barnhart, 335 F.3d 99, 108–09 (2d Cir. 2003)). Accordingly, "ALJs may not rely on objective medical evidence (or the lack thereof)—*even as just one of multiple factors*—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence.

Objective indicators such as normal clinical and laboratory results simply have no relevance to the severity, persistence, or limiting effects of a claimant's fibromyalgia, based on the current medical understanding of the disease." Id. at 97 (emphasis added); see also India G. v. Kijakazi, No. DLB-20-1704, 2021 WL 3930430, at *3 (D. Md. Sept. 1, 2021) ("Phrased differently, the Fourth Circuit noted that normal, objective clinical and laboratory results are not inconsistent with allegations of disabling pain. Thus, after *Arakas*, the use of that objective medical evidence to discount the plaintiff's complaints of the disease's limiting effects is improper in the Fourth Circuit").

Here, the ALJ determined that Plaintiff had the severe impairment of fibromyalgia. AR 21.

In developing Plaintiff's RFC, the ALJ stated that he considered the extent to which Plaintiff's symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence" and that he found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record…." AR 26. In addition to these boilerplate statements, and within his discussion of certain medical records and opinion evidence, the ALJ stated:

> Although the claimant has insisted that her physical functioning remains significantly debilitated as a result of her fibromyalgia, psoriatic arthritis, and

9

> other impairments, *the objective medical findings* document[ed] in the file demonstrate otherwise, and are more persuasive than the claimant's allegations.

AR 29 (emphasis added).

Immediately following this statement, the ALJ cited a January 2019 treatment record from Arthritis & Osteoporosis Consultants of the Carolinas indicating that, on examination, Plaintiff exhibited "good" range of motion and "mild" tenderness. AR 29 (citing AR 654-657). Additionally, the ALJ cited treatment notes from Plaintiff's pain management specialist, Dr. Richard Park, indicating that Plaintiff had normal gait and no neurological deficits. AR 30 (citing AR 812-814).

Accordingly, it appears that the ALJ applied an incorrect legal standard when he considered Plaintiff's symptoms stemming from fibromyalgia. See Potter v. Saul, No. 7:20-CV-27-M, 2021 WL 1033237, at *3 (E.D.N.C. Feb. 23, 2021) (the ALJ's "reliance on generally normal clinical findings as to gait, fine motor skills, and arthritic changes is similar to the problem identified in *Arakas*") (internal citations omitted), report and recommendation adopted, 2021 WL 1030243 (March 17, 2021); Newell v. Kijakazi, No. 2:20-CV-25-FL, 2021 WL 4350050, at *6 (E.D.N.C. Sept. 3, 2021) ("To the extent that the ALJ did consider Plaintiff's fibromyalgia when discussing her subjective complaints as a whole, the court finds that the ALJ's decision appears to have the same error identified by *Arakas* – reliance on a lack of objective medical evidence,

10

even as just one factor, to discredit Plaintiff's statements about the severity of her fibromyalgia symptoms"), report and recommendation adopted, 2021 WL 4344123 (E.D.N.C. Sept. 23, 2021); India G., 2021 WL 3930430, at *2 (finding that it was clear that "the ALJ used normal, objective evidence as a factor in discounting plaintiff's subjective complaints about the limiting effects of her fibromyalgia" in contravention of Arakas).

### 3. Concentration, Persistence, or Pace

The Fourth Circuit has explained that "[t]he ability to perform simple tasks differs from the ability to stay on task." Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015).

An ALJ who finds a plaintiff has moderate limitations in concentration, persistence, or pace is not automatically required to include a corresponding limitation in the RFC. See Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020); Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). Rather, the ALJ has two options. The ALJ may either (1) include additional limitations in the claimant's RFC to account adequately for the particular mental limitations, or, in the alternative, (2) explain the decision not to limit Plaintiff's RFC further. Shinaberry, 952 F.3d at 121 (explaining that Mascio did not impose a categorical rule requiring a specific RFC regarding concentration, persistence, or pace and stating that an ALJ could explain why such a limitation was not

necessary); Rivera v. Berryhill, No. 3:17-CV-00376-GCM, 2019 WL 355536, at *2 (W.D.N.C. Jan. 29, 2019).

Accordingly, an ALJ may account for a claimant's moderate limitation in concentrating, persisting, or maintaining pace where an ALJ limits the claimant to only "simple, routine, and repetitive tasks" and explains why no additional limitation is necessary. See Buckner v. Saul, No. 1:20-CV-00002-FDW, 2021 WL 467204, at *4 (W.D.N.C. Feb. 8, 2021) ("[i]f an ALJ adequately explains why the objective medical evidence supports a limitation to 'simple, routine, repetitive tasks,' the ALJ adequately accounts for a claimant's limitations in concentration, persistence, and pace").

Here, the ALJ found that although Plaintiff had moderate limitations in her ability to concentrate, persist, or maintain pace, she was able to perform "unskilled tasks of a routine and repetitive nature." AR 26. In developing Plaintiff's RFC, the ALJ relied on Plaintiff's own reports of her daily activities, as well as a function report provided by Plaintiff's cousin, and the medical treatment notes from Plaintiff's psychiatrist, Dr. Rasheed Onafuye. See AR 28.

In particular, the ALJ noted that Dr. Onafuye indicated that Plaintiff exhibited a normal attention span and displayed no signs of cognitive difficulty. AR 28 (citing AR 859). Additionally, the ALJ explained that, based on the third-party function report from Plaintiff's cousin (AR 335-342), as well as Plaintiff's own reports and testimony, Plaintiff was able to perform personal

care without assistance as well as household chores, prepare meals, use a computer, go shopping, drive a car, read, watch television, and go out to eat with family and friends. AR 30. The ALJ also noted that Plaintiff was able to plan her wedding and travel to New York for the ceremony, and that she was currently renovating her home. AR 30.

With respect to the planning of Plaintiff's wedding and the renovation of her home, it is not entirely clear from the record how active a role Plaintiff had in these activities. See AR 25 (citing AR 858 (noting Plaintiff "had a celebration for her wedding in NY")); AR 874 (treatment note indicating Plaintiff was experiencing stress "related to home renovation").

Further, although Plaintiff did testify that she was able to perform certain tasks (such as self-care, laundry, and shopping), the ALJ did not discuss Plaintiff's testimony that she had to perform such activities in "intervals" and needed to take frequent breaks. See AR 56-57; see also AR 336-337 (third-party function report completed by Plaintiff's cousin indicating that her cousin was "unaware" of many of Plaintiff's abilities, although Plaintiff did attend some family gatherings). "An ALJ may not consider the type of activities a claimant can perform without also considering the extent to which she can perform them." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018). Here, it is not clear that the ALJ considered the extent to which Plaintiff can perform

activities such as personal care, laundry, and shopping, especially in light of the ALJ's treatment of Plaintiff's subjective complaints discussed above.

Accordingly, the undersigned is not persuaded that the ALJ explained how Plaintiff was able to perform "the routine tasks of unskilled work" despite her moderate limitations in her ability to sustain concentration, persistence, or pace. AR 31.[4]

### B. The Vocational Expert

Plaintiff contends that the ALJ's hypothetical posed to the VE did not "fairly set out all of Ms. Aidala's impairments." Doc. 9 at 20.

"[A] hypothetical question is unimpeachable if it 'adequately reflect[s]' a residual functional capacity for which the ALJ had sufficient evidence." Fisher v. Barnhart, 181 Fed. Appx. 359, 364 (4th Cir.2006) (unpublished) (citing Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir.2005) (alterations in original).

Here, considering the discussion of Plaintiff's RFC set forth above, it is not necessary to determine whether the hypothetical questions posed to the

---

[4] The ALJ noted that both state agency consultants found Plaintiff's "reported mental impairment to be non-severe, creating no more than mild limitations…." AR 31. However, "giving [Plaintiff] the full benefit of all reasonable doubts," the ALJ found that Plaintiff's allegations of anxiety to be "partially consistent with the evidence of record" and concluded that Plaintiff's anxiety, in conjunction with "her ongoing physical discomfort, could create 'moderate" limitations in her ability to sustain concentration, persistence, and pace." AR 31. Having found such moderate limitations, the ALJ was required either to include an additional limitation in Plaintiff's RFC or explain why such additional limitation was not necessary.

VE were proper. See Newell v. Kijakazi, No. 2:20-CV-25-FL, 2021 WL 4350050, at *8 (E.D.N.C. Sept. 3, 2021) ("Plaintiff's argument here is derivative of the RFC argument addressed directly above, as the hypothetical to the VE included the limitations the ALJ found supported by the record that were imposed in the RFC. Because the ALJ's RFC findings on remand may be substantially different, the undersigned does not address whether the hypothetical presented to the VE is supported by substantial evidence"), report and recommendation adopted, 2021 WL 4344123 (E.D.N.C. Sept. 23, 2021).[5]

## VI. Recommendation

The undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Doc. 8) be **GRANTED**, and that the Commissioner's Motion for Summary Judgment (Doc. 10) be **DENIED.**

Signed: November 1, 2021

W. Carleton Metcalf
United States Magistrate Judge

---

[5] Plaintiff additionally contends that "the ALJ's explanation as to whether the VE's testimony is consistent with the [Dictionary of Occupational Titles] frustrates meaningful review." Doc. 9 at 20. Specifically, Plaintiff takes issue with the ALJ's statement that the "vocational expert's testimony is *generally* consistent with the information contained in the Dictionary of Occupational Titles." AR 32 (emphasis added). Considering the undersigned's recommendation to remand based on the ALJ's development of Plaintiff's RFC, it is unnecessary to address this argument.

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).